UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

UNITED STATES OF AMERICA,

    - against -

FRANK DITOMASSO,

    Defendant.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/1/15

**OPINION AND ORDER**

**14-cr-160 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

On November 17, 2015, the Court held a hearing to determine whether defendant Frank DiTomasso is competent to stand trial (the "Hearing"). For the reasons stated below, I determine that defendant carries the burden of proof in this regard, and has failed to demonstrate his incompetence by a preponderance of the evidence.

## II. LEGAL STANDARD AND APPLICABLE LAW

The Supreme Court articulated a two-prong test for determining competency to stand trial in *Dusky v. United States*.[1] *First*, the defendant must

---

[1] 362 U.S. 402, 402 (1960) (per curiam).

have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding."[2]  *Second*, the defendant must have "a rational as well as factual understanding of the proceedings against him."[3]  Competence is determined by a preponderance of the evidence.[4]

The federal statute providing for competency hearings does not allocate the burden of proof, and neither the Supreme Court nor the Second Circuit has decided whether the Government or defendant bears the burden.  There is, however, a lively debate among the other Circuit Courts of Appeal on this point: The Fourth, Seventh, Eighth, and Tenth Circuits place the burden of proof on the defendant,[5] and the Third, Fifth, and Ninth Circuits place the burden of proof on the Government.[6]  The Second Circuit has not taken a position in this debate, on the grounds that "'the allocation of the burden of proof . . . will affect competency

---

[2]     *Id.*

[3]     *Id.*

[4]     18 U.S.C. § 4241(d).

[5]     *See United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005); *United States v. Morgano*, 39 F.3d 1358, 1373 (7th Cir. 1994); *United States v. Denton*, 434 F.3d 1104, 1112 (8th Cir. 2006); *United States v. Smith*, 521 F.2d 374, 377 (10th Cir. 1975).

[6]     *See United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989); *United States v. Hutson*, 821 F.2d 1015 (5th Cir. 1987); *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991).

determinations only in a narrow class of cases where the evidence is in equipoise.'"[7]

The Circuits placing the burden on the Government did so well before the Supreme Court's latest comment on this matter in *Cooper v. Oklahoma*, where in dicta the Court stated that "the *accused* in a federal prosecution must prove incompetence by a preponderance of the evidence."[8]  After *Cooper*, courts in districts throughout this Circuit have held accordingly.[9]  This is sensible.  Placing the burden on the defendant to demonstrate her incompetence merely reaffirms "the notion that a criminal defendant is presumed to be competent to stand trial."[10]  Furthermore, to place the burden on the Government would create an opportunity for competent defendants to delay proceedings by placing their competency in issue and forcing the Government to expend time and resources proving otherwise. I agree with the Supreme Court's guidance, and with the Fourth, Seventh, Eighth, and Tenth Circuits.  DiTomasso is presumed competent; he bears the burden of

---

[7]     *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Medina v. California*, 505 U.S. 437, 449 (1992)).

[8]     517 U.S. 348, 361-62 (1996) (emphasis added).

[9]     *See, e.g.*, *United States v. Lyttle*, No. 05 Cr. 6116, 2009 WL 2390608 (W.D.N.Y. July 31, 2009); *Lewis v. Zon*, 573 F. Supp. 2d 804, 813-14 (S.D.N.Y. 2008); *United States v. Gigante*, 996 F. Supp. 194, 199 (E.D.N.Y. 1998).

[10]     *Morgano*, 39 F.3d at 1373.

proving that he is incompetent to stand trial.[11]

"In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment."[12] DiTomasso's own behavior, as well as the reports and testimony provided by the parties' medical experts, are therefore all considered in determining DiTomasso's competency.

## III. DISCUSSION

There can be no serious doubt that DiTomasso meets (and comfortably surpasses) the *Dusky* standard, and is therefore competent to stand trial. This conclusion is borne out by the content of the reports submitted by both the Government and defense before the Hearing, the testimony presented by Drs. Kissin and Reich at the Hearing, and DiTomasso's own behavior both before and during the Hearing.

---

[11] I would, however, reach the same conclusion if the Government bore the burden of proof. The Government would easily have met its burden to demonstrate competency by a preponderance of the evidence, given the overwhelming weight of the evidence described in this Opinion.

[12] *United States v. Nichols*, 56 F.3d at 411 (citation omitted). *Accord United States. v. Quintieri*, 306 F.3d 1217, 1233 (2d Cir. 2002) ("A district court must consider many factors when determining whether it has "reasonable cause" to order a competency hearing. The district court's own observations of the defendant's demeanor during the proceeding are relevant to the court's determination . . . .").

### A. The Reports

Four mental health professionals opined on DiTomasso's mental health prior to the Hearing, three at the request of defendant and one at the request of the Government. Of these four, three opined specifically on DiTomasso's competency to stand trial: Dr. Miriam Kissin, for the Government, Dr. L. Thomas Kucharski, for defendant, and Dr. Stephen Reich, for defendant.

#### 1. Dr. Reich

Dr. Reich authored his report based on three interviews with DiTomasso shortly after his arrest in September 2014. The majority of the report is a narrative rendition of the three interview sessions, discussing DiTomasso's biographical details and the results of a battery of tests designed to evaluate DiTomasso's basic mental faculties. On all metrics, DiTomasso scored average or below average — but he did not fail any test. Reich noted that, while DiTomasso initially came across as unfocused and very poorly educated, "over the course of three separate interviews, I began to feel that [DiTomasso] is actually an intelligent man who has thought very deeply about life."[13]

Reich did not opine that DiTomasso was incapable of rationally understanding the facts and proceedings against him; however, Reich did opine

---

[13] 9/29/14 Affidavit of Dr. Stephen Reich at 5.

that DiTomasso was incapable of assisting in his defense.[14] This opinion was based on conversations with DiTomasso where DiTomasso refused to acknowledge the weight of the evidence against him, and offered alternative explanations for how incriminating evidence related to the charges against him may have appeared on his computer.[15] This was, according to Reich, "delusional denial" that rendered DiTomasso incapable of assisting counsel in his defense.[16]

### 2. Dr. Kucharski

Dr. Kucharski authored his report based on two interviews with DiTomasso in March 2015. Kucharski determined that DiTomasso possessed a rational and factual understanding of the proceedings against him, as he was capable of describing both the charges and the general roles of major actors in the court system, including the role of the judge, jury, defense counsel and prosecutor.[17] Kucharski also found that DiTomasso was capable of assisting in his defense, as he did not possess any intellectual deficits that would impair his ability

---

[14]     *See id.* at 11.

[15]     *See id.* at 13.

[16]     *See id.* at 11.

[17]     *See* 3/16/15 Forensic Psychological Evaluation by Dr. L. Thomas Kucharski at 4.

to communicate with and understand his attorney.[18]  Kucharski concluded by noting that while DiTomasso denied involvement in the instant offenses, his disengagement from the legal process was not the result of a mental illness rendering him incompetent to stand trial.[19]

### 3. Dr. Kissin

Dr. Kissin authored her report for the Government after observing and meeting with DiTomasso over a period of approximately thirty days.  She reported that DiTomasso clearly understood the nature of the charges against him and the potential consequences of a guilty verdict versus a guilty plea, and that DiTomasso was capable of describing the various courtroom participants and their roles at trial.[20]  Kissin further determined that DiTomasso's decision making abilities were adequate, and that there was no evidence of a mental illness rendering him incapable of assisting counsel in his defense.[21]

Kissin also addressed Reich's report, criticizing Reich for not acknowledging that DiTomasso's "delusional denial" may just be a "disinterest in

---

[18]   *See id.* at 4-5.

[19]   *See id.* at 5.

[20]   *See* 7/13/15 Forensic Report by Dr. Miriam Kissin at 18-19.

[21]   *See id.* at 22.

confessing to serious offense behavior, desire to defend himself in court, or [hope for] attaining more favorable plea arrangements."[22] She agreed with Kucharski's report, stating that while DiTomasso exhibited several problematic behaviors, these behaviors did not compromise his ability to understand the nature and consequences of the proceedings against him or assist counsel in his defense.[23] Kissin therefore found DiTomasso competent to stand trial.[24]

### B.     Hearing Testimony

Drs. Kissin and Reich testified at the Hearing. Both defended the findings in their reports and the methods they used to arrive at these conclusions. Both confirmed their views as to DiTomasso's competency: Kissin considers DiTomasso competent to stand trial. Reich does not.

I find Dr. Kissin's testimony to be more credible than that of Dr. Reich. Not only is Dr. Kissin far more experienced at making competency determinations than Dr. Reich,[25] but her analysis and testimony were benefitted by

---

[22]     *Id.* at 21.

[23]     *See id.* at 22.

[24]     *See id.*

[25]     *Compare* Transcript of November 17, 2015 Competency Hearing ("Tr.") at 9:25-10:16 (Kissin testifying she has performed hundreds of competency evaluations) *with id.* at 83:10-13 (Reich testifying he has performed less than five competency evaluations).

Kissin's ability to review recorded phone conversations and other communications between DiTomasso and his uncle, Robert Marcus.[26] These conversations, recorded while DiTomasso was in his most natural and unguarded state, indicate he was carefully considering the ramifications of his competency evaluations, and requesting information concerning the consequences of being found incompetent to stand trial. In Kissin's opinion, these conversations offered further evidence that DiTomasso was not suffering from a disorder rendering him incapable of assisting counsel in his own defense.[27]

### C. DiTomasso's Conduct

DiTomasso's assertion of incompetency is further undercut by my own observations of DiTomasso's behavior before and during the Hearing. DiTomasso submitted several letters to this Court prior to the Hearing raising a variety of perceived defects in Kissin's report, especially concerning her rendition of his criminal history.[28] These letters clearly identified key players in his case, including the judge, his defense lawyer, and the government's mental health experts, and correctly recognized a defect in Kissin's report which, while irrelevant

---

[26] *See id.* at 19:16-20:24.

[27] *See id.* at 21:2-16.

[28] *See, e.g.*, 8/21/15 Letter from Frank DiTomasso to the Court; 11/12/15 Letter from Frank DiTomasso to the Court ("11/12/15 Letter").

to Kissin's competency determination, the Government admitted was erroneous.[29] One of the letters also requested additional time to review Kissin's report with defense counsel, so DiTomasso could assure himself that his lawyer was adequately apprised of DiTomasso's opinion of the content of the report.[30]

At the Hearing, DiTomasso regularly requested consultations with defense counsel to suggest lines of questioning and point out perceived inaccuracies in Kissin's testimony. In fact, after defense counsel indicated his cross-examination of Kissin was complete, DiTomasso suggested a further question — which defense counsel then posed to the witness.[31] As the Government properly noted in its summation, the *Dusky* standard does not require a defendant to be capable of contributing to a winning defense, or even to a good defense — it merely requires the defendant to be capable of assisting in *a* defense. DiTomasso demonstrated he both possessed a rational understanding of the proceedings and was more than capable of assisting counsel in his own defense by his own words and actions before and during the Hearing. This behavior, combined with the reports of both defense and Government mental health experts and the testimony of

---

[29]   *See* Tr. at 5:25-6:14.

[30]   *See* 11/12/15 Letter.

[31]   *See* Tr. at 74:14-75:5.

Kissin and Reich, is conclusive. DiTomasso has failed to demonstrate his incompetency.

## IV. CONCLUSION

For the foregoing reasons, I find that defendant is not "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[32] DiTomasso is competent to stand trial.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
December 1, 2015

---

[32] 18 U.S.C. § 4241(d).

## -Appearances-

**For the Government:**

Kimberly J. Ravener
Assistant United States Attorney
United States Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2358

**For Defendant:**

Lee A. Ginsberg, Esq.
Freeman Nooter & Ginsberg
75 Maiden Lane, Suite 503
New York, NY 10038
(212) 608-0808