| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------- X<br>FRANK DITOMASSO,<br><br>                              Petitioner,<br><br>                -against-<br><br>UNITED STATES OF AMERICA,<br><br>                              Respondent.<br>------------------------------------------------------------- X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 8/3/22<br><br>21-CV-7704 (VEC)<br>14-CR-160 (VEC)<br><br>MEMORANDUM<br>OPINION & ORDER |

VALERIE CAPRONI, United States District Judge:

Petitioner Frank DiTomasso filed this Section 2255 petition (the "Petition") seeking to vacate his sentence on the grounds of: (1) a freestanding claim of actual innocence; and (2) deprivation of his right to a defense under the Sixth and Fourteenth Amendments because his trial counsel failed to advance an alternate perpetrator theory. Alternatively, Mr. DiTomasso seeks an evidentiary hearing. Upon careful review of the record and Mr. DiTomasso's arguments, the Court finds that Petitioner's claims lack merit. For the reasons discussed below, the Court declines to hold an evidentiary hearing, and Mr. DiTomasso's Petition is DENIED in its entirety.

## BACKGROUND

The Court assumes familiarity with the facts of the case and its procedural history and will summarize only the most pertinent facts.[1] From October 2012 to February 2013, a person referred to as "Sarah Jones" (hereinafter "Sarah") communicated online, primarily via the application Skype, with a person with the username "frankiepthc" (hereinafter "Frankie"). *See*

---

[1] For a detailed discussion of the facts, *see United States v. DiTomasso*, 932 F.3d 58 (2d Cir. 2019).

Hab. Pet. Mem., Dkt. 174 at 4–5.[2] The Government alleged that, on three separate occasions, Frankie attempted to entice Sarah, a minor, to produce child pornography. *Id.* at 5. The Government contended that Mr. DiTomasso was "Frankie," and it devoted a significant amount of time at trial to establishing that the incriminating Skype communications came from Mr. DiTomasso's apartment and were the communications of an individual whose profile matched that of Mr. DiTomasso.[3] *Id.* at 10. The Government contended, *inter alia*, that an Xbox 360 found in Mr. DiTomasso's apartment at the time of his arrest was used to conduct the Skype communications between Sarah and Frankie. *See id.* at 12–13. Further, the Government argued that the Xbox 360 was used to distribute child pornography to other users on anonymous chat websites. *See id.* at 13.

On March 7, 2016, Mr. DiTomasso was convicted of production of child pornography, or attempting to so do, in violation of 18 U.S.C. §§ 2251(a) and (e), and distribution of child pornography in violation of 18 US.C. §§ 2252A(a)(1) and (1)(2)(B). *See* Tr. Trans, Dkt. 84 at 908. Prior to sentencing, Mr. DiTomasso wrote to the Court[4] referring to discussions that he allegedly had with his trial counsel regarding the inability of his Xbox 360 to communicate on Skype in the manner alleged by the Government during the trial. *See* May 11 Letter, Dkt. 91.

---

[2] All citations to the Docket refer to Docket No. 14-CR-160.

[3] This evidence included, *inter alia,* establishing that Frankie's email address, Frankieinnyc1@aol.com ("Frankie account"), was Mr. DiTomasso's email account, *see DiTomasso*, 932 F.3d at 62; that Mr. DiTomasso's Internet Protocol ("IP") address was tied to the Frankie account, *see id.*; *see also* Tr. Trans., Dkt. 80 at 441–44; that the Skype account used for communications with Sarah was linked to the Frankie account, *see DiTomasso*, 932 F.3d at 62; that during a communication with Sarah, Frankie described a "Christmas village" in his apartment that matched the Christmas display in his apartment when Mr. DiTomasso was arrested, *see* Tr. Trans., Dkt. 78 at 274–286; and that Frankie's birthday and telephone number were the same as Mr. DiTomasso's birthday and telephone number, *see DiTomasso*, 932 F.3d at 62.

[4] Judge Scheindlin presided over the trial. On April 11, 2016, after trial but before sentencing, the case was reassigned to the Undersigned.

The Court construed the letter as a *pro se* motion for a new trial in accordance with Federal Rule of Civil Procedure 33.  *See* Rule 33 Mot., Dkt. 97.

Because Mr. DiTomasso asserted a claim of ineffective assistance of counsel, the Court appointed another attorney to represent him for the Rule 33 motion.  *See* Rule 33 Mem. of Law, Dkt. 127.  The central allegation of Mr. DiTomasso's Rule 33 motion was that trial counsel was ineffective because he failed to call Mr. DiTomasso's uncle, Robert Marcus, as a defense witness; Mr. DiTomasso asserted that Marcus, and not he, was responsible for the charged crimes.  *See id.* at 10–11.  The Rule 33 motion was supported by an affidavit from Marcus ("First Marcus Affidavit") stating, *inter alia*, that he had access to the Xbox 360, the Wi-Fi in Mr. DiTomasso's apartment, and Mr. DiTomasso's email and Internet accounts.  *See* First Marcus Aff., Dkt. 127-10, Ex. J ¶¶ 10–11.  Marcus also claimed in the affidavit that he had previously told trial counsel that he was the person responsible for the charged crimes.[5]  *Id.* ¶¶ 13, 15.  The Court denied the Rule 33 motion, primarily because (1) trial counsel had a discernible and rational trial strategy; and (2) trial counsel's failure to call Marcus as a witness, even if all the facts were as Mr. DiTomasso asserted, would not satisfy the standard for ineffective assistance of counsel.  *See* Rule 33 Trans., Dkt. 145 at 10–14; *see also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) (finding that an attorney's decision not to call a particular witness for tactical reasons does not satisfy the standard for ineffective assistance).  On appeal, the Second Circuit affirmed Mr. DiTomasso's conviction.  *United States v. DiTomasso*, 932 F.3d 58, 74 (2d Cir. 2019).

On August 29, 2021, Mr. DiTomasso sent the Court a second affidavit from Marcus (the "Second Marcus Affidavit").  *See* Hab. Pet. Mem. at 19; *see also* Second Marcus Aff., Dkt. 164.

---

[5]   Trial counsel disputed that assertion in an affidavit filed on January 19, 2017, representing that Marcus never told him that he was guilty of the crimes or that he wanted to testify at the trial.  Ex. G, Dkt. 140-7 ¶ 34.

In the new affidavit, Marcus claims, *inter alia*, that he was the perpetrator of the crimes for which his nephew was convicted and provides additional details regarding how he supposedly committed them. Second Marcus Aff. at 3–6. On September 13, 2021, the Court construed these filings as a *pro se* habeas petition pursuant to Section 2255. *See* Order, Dkt. 167. The Court appointed counsel to represent Mr. DiTomasso, *see id.*, and Mr. DiTomasso's counsel filed a supplemental brief in support of the Petition on January 3, 2022, *see* Hab. Pet. Mem., Dkt. 174. The Government opposes the Petition in its entirety. *See* Gov. Opp., Dkt. 175.

## DISCUSSION

### I. Legal Standard for a Section 2255 Petition

By means of a Section 2255 petition, a petitioner "may move the court which imposed [petitioner's] sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Brama v. United States*, No. 08-CV-1931, 2010 WL 1253644, at *2 (S.D.N.Y. Mar. 16, 2010) (internal quotation marks omitted) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). Further, "[a]s a general rule § 2255 petitioners may not raise on collateral review a claim previously litigated on direct appeal." *Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998).

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C § 2244(d)(1), a Section 2255 petition must be filed within a "one-year statute of limitations, whereas previously habeas relief from a federal conviction could be sought at any time." *Wims v. United States*, 225 F.3d 186, 189 (2d Cir. 2000) (internal quotation marks and citation omitted). An exception to the statute of limitations applies "if the defendant establishes (1) cause

for the procedural default and ensuing prejudice or (2) actual innocence." *United States v. Thorn*, 659 F.3d 231 (2d Cir. 2011) (citations omitted). In this case, the petition was timely filed, so there is no need for an "actual innocence" exception.[6]

## II. Freestanding Actual Innocence Claims Are Not a Basis for Habeas Relief

Mr. DiTomasso argues that his conviction should be vacated because he is actually innocent, pointing to the Second Marcus Affidavit as evidence of his innocence. *See* Hab. Pet. Mem. at 24. According to Mr. DiTomasso, the allegations in the Second Marcus Affidavit constitute "newly presented evidence" because Marcus was not called as a witness at trial, and the "highly self-incriminatory nature of the allegations" renders Marcus' claims credible. *Id.* at 25.

Mr. DiTomasso also claims that the allegations in the Second Marcus Affidavit are "compelling" because a reasonable juror, if faced with testimony from a sworn witness admitting that he committed the crimes in question, would be unlikely to find Mr. DiTomasso guilty. *Id.* at 25–26. Because the Second Marcus Affidavit "unequivocally asserts" that Marcus, and not Mr. DiTomasso, is guilty of the conduct charged in both counts of the indictment, Mr. DiTomasso's conviction should be deemed "constitutionally intolerable." *Id.* at 24.

The Government, on the other hand, contends that a claim of "actual innocence" does not form a "freestanding basis for habeas relief," but, even if it did, Mr. DiTomasso has not made out a claim of actual innocence. Gov. Opp. at 22 (internal quotations marks omitted).

The Supreme Court has yet to recognize the existence of a freestanding actual innocence claim. Although such claims can be a gateway through which a petitioner may proceed to avoid

---

[6] Although the Government initially argued that Mr. DiTomasso's motion was not timely filed based on the date on which the Second Circuit affirmed his conviction, *see* Gov. Opp. at 18–21, it overlooked Mr. DiTomasso's petition for a writ of certiorari to the U.S. Supreme Court, *see* Gov. Letter, Dkt. 177 at 1. The parties now agree that Mr. DiTomasso's petition was timely filed. *Id.*; Pet. Reply, Dkt. 176 at 2–4.

a procedural bar, as noted above, Petitioner's claim is not procedurally barred.[7]  Similarly, neither the Second Circuit nor any other circuit has held that a claim of actual innocence, standing alone, is a basis for habeas relief.  *See, e.g.*, *Rivas v. Fischer*, 687 F.3d 514, 540 n.34 (2d Cir. 2012) (recognizing that the Supreme Court has "never explicitly recognized the existence of a freestanding actual innocence claim."); *Hyman v. Brown*, 927 F.3d 639, 657 n.21 ("assuming actual innocence claim could support Eighth Amendment challenge to capital sentence, evidence of innocence would have had to be strong enough to make [defendant's] execution constitutionally intolerable *even if* his conviction was the product of a fair trial.") (emphasis in original) (internal quotation marks omitted); *Cordaro v. United States*, 933 F.3d 232, 240 (3rd Cir. 2019) (citing *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 183 (3rd Cir. 2017) ("While the Supreme Court has yet to decide whether a prisoner can obtain habeas relief based on a freestanding claim of actual innocence, . . . the threshold showing for such an assumed right would necessarily be extraordinarily high.") (internal quotation marks omitted); *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) ("The Fifth Circuit has . . . held that claims of actual innocence are not cognizable on federal habeas review."); *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("[W]e have repeatedly indicated that such claims [of actual innocence] are not cognizable on habeas.").  In short, a freestanding actual innocence claim, even if proved, does not establish a right to habeas relief.

Even if actual innocence were a basis for habeas relief, Mr. DiTomasso's claim would fail.  Drawing from cases discussing actual innocence in the context of using it as a gateway to avoid a procedural bar, to establish actual innocence, "[the] petitioner must demonstrate that, in

---

[7]  The Supreme Court has suggested that "in a *capital* case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and would warrant federal habeas relief."  *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (emphasis added).

light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (cleaned up). "This is a 'demanding' standard and 'permits review only in the extraordinary case.'" *Garafola v. United States*, 909 F. Supp. 2d 313, 326 (S.D.N.Y. 2012) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). To qualify for the equitable exception, "a claim of actual innocence must be both credible and compelling." *Rivas*, 687 F.3d at 541 (internal quotation marks and citations omitted). "A claim is credible when it is supported by new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial; it is compelling when the petitioner can demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." *Cosey v. Lilley*, 460 F. Supp. 3d 346, 374 (S.D.N.Y. 2020) (cleaned up).

     Mr. DiTomasso's claim of actual innocence is neither credible nor compelling. His claim is not credible because the purported new evidence — the Second Marcus Affidavit — is decidedly at odds with the record in this case. *See* Gov. Opp. at 20. His claim is not compelling because the Second Marcus Affidavit is not "more likely than not" to provide reasonable jurors with reasonable doubt regarding Mr. DiTomasso's guilt. *Cosey*, 460 F. Supp. 3d at 374.

     As an initial matter, the circumstances of Marcus's extraordinary "confession" are questionable, inasmuch as Marcus himself has previously provided serious reason to doubt the veracity of his present claims. When, prior to trial, Mr. DiTomasso informed Marcus that he intended to blame him for the crimes when he testified, Marcus replied, "I don't think that would be a good idea." *See* Ex. A, Dkt. 140-3 at 786–87; *see also* Gov. Opp. at 13. Marcus instead suggested that he might confess after the trial,[8] stating, "I don't see why it would be too late for

---

[8]     In a telephone call after his trial had ended, Mr. DiTomasso discussed with Marcus the possibility of Marcus coming forward. Mr. DiTomasso acknowledged that tactic would likely not work, but it would "gimme

me, because I was giving you the example of Central Park jogger."[9] *Id.* Additionally, in a sworn affidavit, trial counsel stated that Marcus never admitted that he was guilty of the charged crimes at any point during the trial, and never said that he wanted to testify during the trial. Ex. G, Dkt. 140-7 ¶ 34. Moreover, even if Marcus' confession were credible, it is not compelling; as with prior attempts to obtain post-conviction relief, as written, the Second Marcus Affidavit does not preclude the possibility that both Marcus and Mr. DiTomasso are guilty of the charged conduct (*i.e.*, that Marcus is responsible for certain of the illicit communications or distributions, but not all of them).

In short, actual innocence is not a basis for habeas relief, but even if it were, Mr. DiTomasso has not come close to demonstrating actual innocence.

### III. Mr. DiTomasso Fails to Show that Trial Counsel Violated his Right to Autonomy

In addition to his actual innocence claim, Mr. DiTomasso raises a constitutional autonomy claim, arguing that he was not permitted by his trial counsel to present the "meaningful defense" that he wanted to pursue at trial. Mr. DiTomasso's preferred defense was that Marcus was the true perpetrator of the crimes with which he was charged. *See* Hab. Pet. Mem. at 27–29. The Court's ineffective-assistance-of-counsel jurisprudence, *see generally Strickland v. Washington*, 466 U.S. 668 (1984), does not apply where "the client's autonomy, not counsel's competence, is in issue," *McCoy v. Louisiana*, 138 S. Ct. 1500, 1510 (2018). Violation

---

another lawyer and gimme more time, so, so, you and I could work on this." Rule 33 Opp., Dkt. 140 at 30 n.23 (citation omitted).

[9] In 1995, five young men were convicted of the assault of a female jogger in Central Park. They received sentences ranging from five to fifteen years. In 2002 — seven years later — a man who was serving a life sentence for a separate crime confessed to assaulting the jogger alone. When DNA testing confirmed this, the five originally convicted men were released. Benjamin Weiser, *5 Exonerated in Central Park Jogger Case Agree to Settle Suit for $40 Million*, N.Y. Times, June 19, 2014, https://www.nytimes.com/2014/06/20/nyregion/5-exonerated-in-central-park-jogger-case-are-to-settle-suit-for-40-million.html.

of a defendant's Sixth Amendment right to autonomy is a structural error, and a structural error is present "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." *See id.* at 1511. While a defendant who chooses to be represented does not "surrender control entirely to counsel," *see id.* at 1508, defendants "necessarily relinquish some autonomy to their attorneys" by retaining counsel, *see United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir 2020). Further, while "it is the defendant's prerogative . . . to decide on the objective of his defense," *see McCoy*, 138 S. Ct. at 1505, once a defendant decides on an objective, "[t]rial management is the lawyer's province", *see id.* at 1508 (internal quotation marks omitted).

Rather than argue actual innocence as a way to avoid procedural default and to re-raise his previously-rejected claim of ineffective assistance of counsel, Mr. DiTomasso has recharacterized the claim as a denial of his right to autonomy. Mr. DiTomasso argues that trial counsel deprived him of his constitutional rights under the Sixth and Fourteenth Amendments because he was not permitted to present the "meaningful defense" that he wanted to pursue in his trial (to wit: Marcus committed the crimes at issue). *See* Hab. Pet. Mem. at 27–29. In a sworn affidavit, Mr. DiTomasso claims that he repeatedly asked his trial counsel to call Marcus as a witness, which trial counsel failed to do. *See id.* at 30. Further, Mr. DiTomasso claims that trial counsel failed to elicit testimony during cross examination regarding the possibility that it was Marcus who committed the crimes charged. *See id.* Rather than pursue Mr. DiTomasso's preferred alternate-perpetrator defense, Mr. DiTomasso argues, trial counsel chose a strategy based upon "admitting guilt" to distribution of child pornography but arguing the proof was insufficient to establish production.[10] *See id.* at 31; *see also* Ex. G ¶¶ 53–54. Mr. DiTomasso

---

[10] Contrary to Mr. DiTomasso's argument, trial counsel never admitted guilt to distribution. He did, however, choose to focus his trial arguments on production, given the overwhelming evidence related to distribution and the

9

claims that he made it known that he wanted to contend that Marcus was the perpetrator leading up to the trial, that he told trial counsel on "multiple occasions" that he wanted to call Marcus as a witness, and that Marcus was willing to take the stand to testify regarding his guilt. *See* Hab. Pet. Mem. at 31. Mr. DiTomasso also claims that trial counsel failed to corroborate his claim that he could not be the perpetrator by investigating the Xbox 360 involved in the case, which Mr. DiTomasso asserts was not capable of being used for Skype communications.[11] *Id.* at 31–32. Taking all these claims together, Mr. DiTomasso argues that trial counsel's failure to execute the defense for which Mr. DiTomasso advocated denied Mr. DiTomasso the constitutional right to assert his chosen defense. *Id.* at 33.

The Government contends that this argument is just a "rehash" of his previously-rejected ineffective assistance of counsel claims and that it ignores the facts that: (1) Mr. DiTomasso advanced his chosen defense through his own testimony at trial, in which he accused his uncle of perpetrating the crimes, (2) the defense that Mr. DiTomasso wanted to pursue was wholly unpersuasive and ignored swaths of evidence, and (3) at the time of trial, Marcus was not willing to go along with this plan. *See* Gov. Opp. at 22–23. Moreover, the Government argues, trial counsel was not obligated to pursue Mr. DiTomasso's "baseless" views regarding the Xbox 360's capabilities, particularly in the face of "clear forensic evidence" indicating that the device had accessed the Internet, including via the Skype application. *Id.*

---

more significant mandatory sentence associated with a conviction for production of child pornography. *See* Ex. G ¶ 53; Rule 33 Trans., Dkt. 145 at 10; Tr. Trans, Dkt. 84 at 842–54.

[11] The Xbox 360 claim appears to be a secondary issue, with the majority of Mr. DiTomasso's arguments focusing on trial counsel's failure to call Marcus as a witness. Moreover, even if Mr. DiTomasso's claims regarding the Xbox 360's inability to conduct Skype communications are accurate, there were other devices in Mr. DiTomasso's apartment that unquestionably could support communication on Skype. Accordingly, Mr. DiTomasso's Xbox 360 argument, even if true, would not prove determinative.

Mr. DiTomasso's claims regarding the infringement on his right to autonomy are unavailing. In *McCoy*, the Supreme Court made clear that while "it is the defendant's prerogative, not counsel's, to decide on the objective of his defense," 138 S. Ct. at 1505, once a defendant decides on an objective — *e.g.*, acquittal — "[t]rial management is the lawyer's province" and counsel must decide "what arguments to pursue", *id.* at 1508 (cleaned up). In the present case, trial counsel did not act contrary to Mr. DiTomasso's ultimate objective of acquittal by failing to call Marcus to the stand. Rather, faced with a mountain of damning evidence, trial counsel reasonably pursued the strategy of trying to persuade the jury that the Government's evidence was insufficient to prove that Mr. DiTomasso had produced child pornography, rather than to make "simply preposterous" arguments regarding distribution of child pornography. *See* Rule 33 Trans. at 9–12. In making this choice, trial counsel did not deny Mr. DiTomasso autonomy in a constitutionally cognizable way; trial counsel pursued a rational strategy in furtherance of his and Mr. DiTomasso's shared goal of acquittal. "Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance" are within the purview of trial counsel. *See Gonzalez v. United States*, 553 U.S. 242, 249 (2008). In this case, trial counsel was well within the scope of his responsibility when he chose not to call Marcus as a defense witness.

Even if trial counsel's actions constituted ineffective assistance,[12] which the Court does not find and Mr. DiTomasso does not raise at this juncture, they would not constitute the sort of structural error that *McCoy*, the case upon which Mr. DiTomasso largely relies, found to be sufficient to warrant a new trial in the absence of a showing of prejudice. *See* 138 S. Ct. at 1511 (finding that defense counsel's admission of defendant's guilt was a structural error that blocked

---

[12] The Government misconstrues Mr. DiTomasso's claim as an ineffective assistance claim in its opposition. Gov. Opp. at 22–24.

defendant's ability to make decisions about his own defense because "a jury would almost certainly be swayed by a lawyer's concession of his client's guilt."). Trial counsel's decision not to call Marcus as a defense witness, along with the decision to focus his attention on the more serious count of production of child pornography rather than the distribution count, did not infringe on Mr. DiTomasso's right to maintain his innocence of the charged crimes; given the evidence, it was strategic choice in pursuit of Mr. DiTomasso's goal of acquittal. *See id.* at 1508 (decisions reserved to the client "are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*.") (emphasis in original) (citation omitted). Further, although this Court is not bound by the decisions of its sister circuits, their subsequent interpretations of *McCoy* confirm that the present case does not contain a structural defect that warrants ordering a new trial in the absence of a showing of prejudice. *See*, *e.g.*, *Rosemond*, 958 F.3d at 122–23 (finding that defense counsel's decision to concede one element of a charged crime as part of an overall strategy of arguing that the government did not meet its burden of proof did not infringe on defendant's autonomy as it was in furtherance of a shared goal of acquittal); *Thompson v. United States*, 791 F. App'x 20, 26–27 (11th Cir. 2019) (holding that defendant's autonomy right was not violated when trial counsel conceded some, but not all, elements of a charged crime); *United States v. Audette*, 923 F.3d 1227, 1236 (9th Cir. 2019) (holding that defendant's autonomy right was not violated when there was a disagreement with trial counsel about "which arguments to advance"). Trial counsel never conceded that Mr. DiTomasso was guilty of the crimes charged in either count, and his decision not to call Marcus as a witness, along with his choices to focus on the production count and not to pursue the Xbox 360 defense, do not fall within the categories of decisions reserved by the Supreme Court for the defendant — "whether to plead guilty, waive the right to a jury trial,

testify in one's own behalf, and forgo an appeal." *See McCoy*, 138 S. Ct. at 1508. In short, Mr. DiTomasso fails to show that trial counsel's trial assistance infringed on his right to autonomy in violation of the Sixth and Fourteenth Amendments.

## CONCLUSION

For the foregoing reasons, the Court declines to hold an evidentiary hearing, and the Petition is DENIED. The Court declines to issue a certificate of appealability, as Petitioner has not made a substantial showing of a denial of a constitutional right. *See Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

The Clerk of Court is respectfully directed to terminate the open motion at No. 14-CR-160, Dkt. 166, and to close the case at No. 21-CV-7704.

**SO ORDERED.**

Date: August 3, 2022  
New York, New York

VALERIE CAPRONI  
United States District Judge